OKLAHOMA TAX COMMISSION v. BOARD OF COM'RS OF OKLAHOMA COUNTY (STATE ex rel. HESTER, County Atty., et al., Interveners).

No. 33207.    April 20, 1948.

*192 P. 2d 668.*

C. W. King and R. F. Barry, both of Oklahoma City, for plaintiff in error.

Warren H. Edwards, Fred L. Hoyt, Troy Shelton, and W. A. Lybrand, all of Oklahoma City, amicus curiae, for defendant in error.

James R. Hester and Joe A. Smalley, both of Norman, for interveners.

HURST, C.J. Ira T. Winfrey was for some years prior to 1947 engaged in the business of procuring motor license tags for his customers, so that they would not be compelled to stand in line and suffer inconveniences and consume time in procuring their tags. For this service he charged a small fee. From January 8 to February 10, 1947, he purchased tags from official tag agents of Cleveland county for his customers residing in Oklahoma county, the license fees for which, amounting to $37,772.73,

were, by the tag agents of Cleveland county, remitted to the Oklahoma Tax Commission.

The question presented by this appeal is whether 95 per cent of such license fees should be apportioned to Oklahoma county, where the owners of the registered vehicles resided, or to Cleveland county, where the fees were collected by the agents of the Oklahoma Tax Commission.

The case is controlled by the provisions of 47 O.S. Supp. 1947 §22.2, the material portion of which is as follows:

"All license fees, taxes and penalties collected or received by the Commission pursuant to the provisions of this act shall be apportioned as follows: . . . .

"(b). The remaining ninety-five per cent (95%) of all license fees and penalties collected or received by the Commission from the registration of trucks used exclusively for 'farm use' and for which farm truck tags are issued, and automobiles, pursuant to this Act, shall be apportioned monthly to the county in which the money was collected, for the use and support of the common schools of the county . . . ."

The appellants contend that this statute is unambiguous and therefore needs no construction, and that under it the fees are to be apportioned to the county in which they are collected, regardless of the residence of the owners of the registered motor vehicles.

The plaintiff contends: (1) that this court, in School District No. 25 v. Hodge, 199 Okla. 81, 183 P. 2d 575, decided the question contrary to the contention of appellants, (2) that since the license tax is in lieu of ad valorem taxes on the motor vehicles, and the ad valorem taxes, if permitted, would belong to the county where the motor vehicle was taxable, the Legislature should be presumed to have intended the license fees to go as the ad valorem tax would go, (3) that the history of the laws and contemporary circumstances show the legislative intent as held by the trial court, (4) that the interpretation of the

Oklahoma Tax Commission was for its convenience, and (5) that the interpretation urged by appellants leads to an absurdity which the Legislature did not intend.

We agree with the contention of the appellants.

The case of School District No. 25 v. Hodge, above, involved the constitutionality of the 1947 School Law, House Bill No. 85. The question of how the motor license fees should be apportioned between the counties was not involved.

The statute is plain and unambiguous in requiring that 95 per cent of the license fees "be apportioned monthly to the county in which the money was collected", and that it be used for the support of the common schools of the county. The quoted language of this section of the statute is plain, and there is no other language of this or any other section that creates an ambiguity. The prior law (47 O.S. 1941 §22.2) apportioned 90 per cent of the license fees in the same manner.

The plaintiff's contention, if sustained, would require the Oklahoma Tax Commission, in making the apportionment, to examine each application instead of the returns from the 77 counties. Clearly the Legislature intended to make no such requirement, and the courts cannot do so without invading the legislative field.

The rule is that if the intention of the Legislature is plainly expressed in a statute it must be followed without further inquiry, and "whether the result accords with right and justice and logic, in the eyes of the court, is a question of no judicial concern." Martin v. Carman, 183 Okla. 177, 80 P. 2d 561; Russett School District v. Askew, 193 Okla. 102, 141 P. 2d 575. As to such a statute, "there is no occasion for resorting to rules of statutory interpretation, and the court has no right to look for or impose another meaning." 50 Am. Jur. 205. "Rules of interpretation are resorted to for the pur-

pose of resolving an ambiguity, not for the purpose of creating it." 50 Am. Jur. 209. "If the language is plain, unambiguous and uncontrolled by other parts of the act or other acts upon the same subject the court cannot give it a different meaning." Sutherland Statutory Construction (3rd Ed.) §4703.

It follows that the rules of interpretation urged by the plaintiff may not be resorted to. The last rule urged by plaintiff, that statutes should be so construed as to avoid absurd consequences, applies only when the statute is subject to interpretation, not where the legislative intent is clearly expressed, as here. 59 C.J. Statutes, §§573, 574.

Reversed, with directions to render judgment dismissing the proceedings.

DAVISON, V.C.J., and BAYLESS, WELCH, CORN, ARNOLD, and LUTTRELL, JJ., concur.