OSCN Found Document:Question Submitted by: The Honorable Ryan Martinez, Oklahoma House of Representatives, District 39

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Ryan Martinez, Oklahoma House of Representatives, District 39
2023 OK AG 4
Decided: 04/13/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 4, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does the Central Purchasing Act ("Act") require the Office of Management and Enterprise Services ("OMES"), through the State Purchasing Director, to verify that an exempt purchase fits within the scope of an exemption claimed?
I.
SUMMARY
¶1 Yes, as a part of its oversight duties, OMES is required to routinely verify an agency's claim that an acquisition is statutorily exempt from the requirements of the Act. The plain text and legislative history of the Act charges OMES, through the State Purchasing Director ("Purchasing Director"), with the sole and exclusive authority for all state agency acquisitions. For purposes of ensuring agencies are accountable for their acquisitions, the Act provides OMES with authority to conduct agency audits and to submit findings to the State Auditor and Inspector or the Attorney General. Despite the seemingly sweeping coverage of the Act, there are a number of exemptions within the Act and in other titles of Oklahoma law. The Legislature should review the Act and all statutes affording exemptions to agencies and/or acquisitions to resolve existing ambiguities. Notwithstanding these ambiguities, given the entirety of the legislative scheme, the Act requires OMES to routinely verify an agency's claim that an acquisition is statutorily exempt from the requirements of the Act.

II.
BACKGROUND
¶2 The Oklahoma Legislature adopted the Act, 74 O.S.2021, §§ 85.1--85.44E, in response to calls for government reforms about the subjective awarding of contracts and purchases that were diffused between state agency officials. The Act created the position of the Purchasing Director, standardized procedures to govern governmental agencies' acquisitions and set penalties for violations of the Act. It is intended to protect Oklahoma citizens by promoting economy in government and reducing the likelihood of fraud. Indiana Nat'l Bank v. State, 1993 OK 101, ¶ 12, 857 P.2d 53, 60. The Act also "insures [sic] that government officials are accountable to the public and are discharging their duties competently and responsibly." Id.
¶3 In 2011, the Department of Central Services was consolidated into the Office of State Finance, which became OMES one year later.[1] Despite the consolidation and name changes, the core of the Act has consistently required that "all activities of any state agency[2] . . . relating to purchasing shall be under the direction of the Purchasing Division unless otherwise provided by the Act." 74 O.S.2021, § 85.3(A, D).
¶4 Administrative control of OMES is under a Director who is appointed by the Governor, by and with the consent of the Senate. 62 O.S.2021, § 34.5; 74 O.S.2021, §§ 61.1--61.2. The OMES Director is charged in statute with hiring the Purchasing Director. 74 O.S.2021, § 85.3(B). That Purchasing Director, in turn, has "sole and exclusive authority and responsibility for all acquisitions by state agencies." 74 O.S.2021, § 85.5(A). The Purchasing Director's authority includes requesting additional information deemed necessary to review a proposed agency acquisition. 74 O.S.2021, § 85.7(A)(2). If the Purchasing Director determines that the acquisition is unnecessary, excessive or unjustified, the Purchasing Director must deny the requisition. Id. 
¶5 Broadly, the Purchasing Director has a duty to "review state agency acquisitions for the purposes of verifying compliance with the provisions of the Act and rules promulgated by OMES. Id. § 85.5(E). If the Purchasing Director determines that an agency is not in compliance with the Act or associated rules, at a minimum, the following options exist:
1) reduce a state agency's acquisition authority; 2) report any agency noncompliance to the OMES Director;
3) submit these findings to the State Auditor and Inspector for further investigation; or
4) transmit the information to the Attorney General for further investigation upon reasonable belief that an agency acquisition constitutes a criminal violation, such as the Act's bid-splitting prohibitions. [3] 

74 O.S.2021, §85.5(E), (F). 
¶6 As discussed below, there are a number of exemptions within the Act and in other titles of Oklahoma law. First, there are limited and special circumstance exemptions that are expressly left to the discretion of OMES. Then, within the Act are exemptions provided to more than forty agencies and types of acquisitions. Finally, there are additional exemptions outside of the Act, which generally provide that the specific agency's transaction is "not subject to the Central Purchasing Act."
¶7 You asked whether OMES is required to verify an agency's claim that its proposed acquisition is statutorily exempt from requirements of the Act. For the reasons set forth below, this office concludes that OMES, by and through its Director and Purchasing Director, is required to maintain oversight and responsibility for all agency acquisitions, and this includes routinely verifying an agency's claim that an acquisition is statutorily exempt.

III.
DISCUSSION
A. OMES is required to maintain oversight and responsibility for all agency acquisitions, and this includes routinely verifying an agency's claim that an acquisition is statutorily exempt.

1. Within the Act, OMES officials are authorized to grant limited and special circumstance exemptions from the Act's requirements. In granting a limited and special circumstance exemption, OMES is affirming that the acquisition meets the requirements for the statutory exemption. 

¶8 Within the Act, certain OMES officials have specific statutory authority to exempt an agency acquisition from the Act's general requirements. Generally, these exemptions can be categorized as limited and based on special circumstances, and include the following:
1) an exemption is in the best and immediate interest of the state due to unusual, time-sensitive, or unique circumstances, as determined by the Purchasing Director.[4]
2) certain state agencies' contracts are mandatory statewide contracts, as designated by the Purchasing Director; and
3) a determination that the proposed supplier of the goods and services is the only qualified vendor.

74 O.S.2021, § 85.7(A)(7); 74 O.S.2021, § 85.5(G)(5); 74 O.S.2021, § 85.44D.1.
¶9 In the first two special circumstances, OMES has complete discretion to grant the exemption. As such, OMES has a clear duty to ensure that the claimed exemption is lawful and properly within the category of the exemption being claimed. In the third special circumstance, the Act prohibits the Purchasing Division from "approving" the acquisition until the agency submits a signed certification and assurance that the acquisition meets the requirements of the Act. 74 O.S.2021, § 85.7(A)(7).[5] Therefore, OMES also has a responsibility to verify the sole-source exemption is being lawfully utilized. OMES's approval requirement means that OMES officials should be regularly attempting to verify that the exemptions cited and certified are legitimate, both when the exemption is granted and when the State is billed for the allegedly exempt acquisition. Otherwise, OMES's "approval" is a mere rubber-stamp, rather than the diligent oversight the Legislature envisioned, given the above text and intent. After all, OMES has a clear duty to ensure "that government officials are accountable to the public and are discharging their duties competently and responsibly." Indiana Nat'l Bank, 1993 OK 101, ¶ 12, 857 P.2d at 60.

2. Under the Act, at 74 O.S.2021, §§ 85.12 and 85.39, the Purchasing Director is solely responsible for reviewing and approving exempted agency purchasing procedures and conducting audits to ensure the purchasing procedures used by the exempted agency are followed. With this responsibility is the duty to routinely verify an agency's claim that an acquisition is statutorily exempt.

¶10 In addition to the limited and special circumstance exemptions described above, within the Act the Legislature has specifically excluded more than forty agencies and types of acquisitions; most of the exclusions are set forth in section 85.12.[6] 74 O.S.2021, § 85.12. Here, the Act is clear in providing that the exempted agency or acquisition is not entirely exempt from the Act or OMES oversight. Rather, section 85.12 mandates that the agency or acquisition adhere to an agency's internal purchasing procedures, which must have been reviewed and approved by the Purchasing Director. Id.[7]

¶11 Additionally, the Act requires the exempted agency to maintain a file for each acquisition, which must contain a justification for the acquisition, supporting documentation "and any other information the State Purchasing Director requires to be kept." 74 O.S.2021, § 85.39(C). This is significant because it furthers the requirement of the Purchasing Director to ensure agencies comply with the Act. Necessarily, this includes routinely auditing the exempted agencies' acquisitions to ensure the agency procedures are followed. 74 O.S.2021, § 85.12(D).[8] If it were determined that compliance has not been achieved, OMES is authorized to reduce an agency's acquisition threshold and submit audit findings to the State Auditor and Inspector and/or the Attorney General for further investigation. 74 O.S.2021, § 85.5. Consistent with the intent of the Act, the Legislature has clearly entrusted OMES with routinely verifying that agency purchases are made in accordance with the requirements in law, and thus provide accountability for taxpayer funds.
¶12 Nevertheless, while this analysis is conclusive as to the agencies and acquisitions expressly within the provisions of the Act, a question remains as to the scope of an exemption that is statutorily provided for outside of the Act.

3. The Purchasing Director is responsible for routinely verifying that an exemption claimed outside of the Act is lawful.

¶13 For an agency or acquisition not among those identified in the Act's exemptions, it has been generally stated that this demonstrates the Legislature's intent for the agency to remain subject to the Act. Cunningham Lindsey Claims Mgmt., Inc. v. Oklahoma State Ins. Fund, 2002 OK CIV APP 7, ¶ 9, 38 P.3d 248, ¶ 9; 2011 OK AG 9, ¶ 11. Outside of the Act, however, the Legislature has provided for more than thirty other limited exemptions to various agencies and their acquisitions.[9] For example, statutes pertaining to the Oklahoma Tourism and Recreation Department exempt from the Act certain purchases by the agency. 74 O.S.2021, §§ 2221, 2232 and 2239. In 2013, this office confirmed the agency's exemption when it concluded that "[s]ection 2221 of Title 74 allows the Tourism Department to enter into certain contracts that are not subject to the Central Purchasing Act." 2013 OK AG 16, ¶ 9. Authorizing these exemptions, or removing them, is categorically within the Legislature's sole and exclusive fiscal policymaking powers. Oklahoma Educ. Ass'n v. State ex rel. Okla. Legislature, 2007 OK 30, ¶ 20, 158 P.3d 1058, 1065; OKLA. CONST. art. V, §§ 1, 36. However, in authorizing these exemptions, the Legislature has arguably created ambiguities as to the scope of OMES's duties. That is, a question exists as to whether exemptions afforded outside of the Act are blanket exemptions to any and all parts of the Act--meaning that OMES is without any responsibility for them--or whether these acquisitions are to be conducted like the section 85.12 exemptions within the Act. In resolving an ambiguity in a statute, courts look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying that intent. Wilhoit v. State, 2009 OK 83, ¶ 11, 226 P.3d 682, 685. Further, "where the statutory language is ambiguous or uncertain, a construction is applied to avoid absurdities remembering that the Legislature is not deemed to have created an absurdity or done a vain and useless act." World Publ'g Co. v. White, 2001 OK 48, ¶ 10, 32 P.3d 835, 842 (footnote omitted).
¶14 Here again, the Legislature has vested OMES with duties to protect taxpayer funds used in acquisitions by state agencies. These responsibilities and powers include directing the acquisition process, having the sole authority to review and approve agency acquisition procedures, and ensuring the Purchasing Director has sole and exclusive responsibility for all acquisitions by all state agencies not otherwise exempt by the Act. 74 O.S.2021, §§ 85.5(A), 85.7(A). Most significantly, OMES has the power to audit agencies, reduce acquisition authority, impose consequences on procurement officer certifications, and work with investigative agencies in instances believed to be a violation of the Act or other law. 74 O.S.2021, §§ 85.5, 85.12.
¶15 For clarity, the Legislature should review the Act and all statutes affording exemptions to agencies and/or acquisitions and resolve existing ambiguities, including to make explicit any oversight role that should be performed by OMES or another entity. Notwithstanding these ambiguities, given the entirety of the legislative scheme, this office concludes that OMES is required to maintain oversight and responsibility for all agency acquisitions. This necessarily includes routinely verifying an agency's claim that an acquisition is statutorily exempt.
[10] This determination is consistent with the intent of the Act, which ultimately is to protect the public at large by promoting economy in government and reducing the likelihood of fraud. Indiana Nat'l Bank, 1993 OK 101, ¶ 12, 857 P.2d at 60. To permit blanket exemptions without requiring oversight by OMES would provide sweeping and carte blanche authority to administrative agencies, risking that they might irresponsibly discharge their trusted duties to care for taxpayer funds. This was certainly not the intent of the Legislature; that intent requires concluding that OMES has a duty to ensure "that government officials are accountable to the public and are discharging their duties competently and responsibly," including by overseeing exemptions of all kinds.
¶16 It is, therefore, the official Opinion of the Attorney General that:

OMES, through the Purchasing Director, is required to maintain oversight and responsibility for all agency acquisitions, and this includes routinely verifying an agency's claim that an acquisition is statutorily exempt.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
BRAD CLARK
DEPUTY ATTORNEY GENERAL

FOOTNOTES
[1] OMES is an executive branch department that provides a wide range of services for Oklahoma State government. 74 O.S.2021, § 61.2; 2003 OK AG 3, ¶ 1. OMES describes itself as the "state government's backbone," which state agencies turn to for the finance, property, human resources, and technology services they need to succeed. Oklahoma Office of Management & Enterprise Services, https://oklahoma.gov/omes/about.html (last visited Apr. 12, 2023). The self-acclaimed central finance agency for the state, OMES is responsible for the oversight of billions of dollars a year to all corners of government, and assists agencies in the management of money through budgeting, accounting and purchasing. Id.
[2] The term "state agency" is defined as "any office, officer, bureau, board, counsel, court, commission, department, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only political subdivisions of the state[.]" 74 O.S.2021, § 85.2(27).
[3] In 2020, the Act was amended to remove the felony classification for split purchasing for the purpose of evading the requirements of competitive bidding. Additionally, it does not appear that any reports of potential criminal activity have been transmitted to the Attorney General in at least the last five years.
[4] Nearly identical authority is afforded to the OMES Director pursuant to 62 O.S.2021, §34.62(3).
[5] The Act further requires OMES to submit monthly reports to the Speaker of the House and the President Pro Tempore of the Senate (and any member of the Legislature requesting the report) detailing sole source acquisitions by state agencies for the prior month. 74 O.S.2021, § 85.44D.1(B). Included in the monthly reports must be the date of either approval or disapproval, and if disapproved, the reason why the requisition was disapproved. Id.
[6] The remaining exemptions within the Act are set forth in section 85.3A. The Oklahoma State Regents for Higher Education is the only executive branch agency within these exemptions.
[7] The Act mandates an agency to develop internal purchasing procedures for all acquisitions and submit them to the Purchasing Director for purposes of ensuring compliance with the Act. 74 O.S.2021, § 85.39. The agency procedures shall, at a minimum, include provisions for the agency's needs, funding, routing, audits, monitoring and evaluations. Id. Until the Purchasing Director approves an agency's internal purchasing procedures, the agency is unable to, legally, make acquisitions exceeding threshold limits. Id. Once approved, administrative rules require internal agency purchasing procedures to be reviewed as needed, but at least annually, and that in connection with the Purchasing Director's audit responsibilities, agencies are required to promptly provide records for acquisitions for the audit period. Okla. Admin. Code § 260:115-5-7(b--d); Okla. Admin. Code § 260:115-5-19(b).
[8] OMES has promulgated administrative rules to establish an audit team that conducts audits of agency acquisitions and promulgated administrative rules to govern the audits. Okla. Admin. Code § 260:115-5-19.
[9] Among the additional exemptions are the following: 2 O.S.2021, § 16-82; 17 O.S.2021, §§ 18, 324; 34 O.S.2021, § 6.1; 47 O.S.2021, § 2-108.1; 53 O.S.2021, § 1.10; 56 O.S.2021, § 4001.2; 57 O.S.2021, § 537; 60 O.S.2021, § 668.1; 62 O.S.2021, §§ 34.33, 71.2, 2306, 2309; 63 O.S.2021, §§ 1-410, 3275, 3292, 6900; 64 O.S.2021, § 1004; 68 O.S.2021, § 264; 70 O.S.2021, § 3970.5; 74 O.S.2021, §§ 13, 150.27, 2213, 2239, 2244, 3317, 4109, 5003.11, 5013.2, 85.58N.
[10] OMES has promulgated administrative rules providing that the Director will issue directives or instructions to state agencies regarding procurement to ensure "compliance with the Central Purchasing Act, procurement rules and any other matter relating to state agency acquisitions." Okla. Admin. Code § 260:115-1-1(C) (emphasis added). Then, OMES has promulgated rules authorizing the Director to suspend and/or revoke the certification of a Certified Procurement Officer if the Director reasonably believes the agency did not make acquisitions pursuant to the Act, "applicable rules, other statutory provisions, or the state agency's internal purchasing procedures." Okla. Admin. Code § 210:115-5-3(b) (emphasis added). Consequently, it appears that OMES and the Purchasing Director arguably already do interpret the Act as authorization to review and verify agency acquisitions regardless of whether an acquisition is exempt or not.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2003 OK AG 3, 
Question Submitted by: James C. Joseph, State Bond Advisor, Bond Oversight Commission
Cited

 
2011 OK AG 9, 
Question Submitted by: Robert E. "Gene" Christian, Executive Director, Office of Juvenile Affairs
Cited

 
2013 OK AG 16, 
Question Submitted by: Ms. Deby Snodgrass, Executive Director, Oklahoma Tourism and Recreation Department
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2002 OK CIV APP 7, 38 P.3d 248, 73 OBJ 409, 
CUNNINGHAM LINDSEY CLAIMS MANAGEMENT, INC. v. OKLAHOMA STATE INS. FUND
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 101, 857 P.2d 53, 64 OBJ 2328, 
Indiana Nat. Bank v. State Dept. of Human Services
Discussed at Length

 
2001 OK 48, 32 P.3d 835, 72 OBJ 1797, 
WORLD PUBLISHING CO. v. WHITE
Discussed

 
2007 OK 30, 158 P.3d 1058, 
OKLAHOMA EDUCATION ASSOCIATION v. STATE ex rel. OKLAHOMA LEGISLATURE
Discussed

 
2009 OK 83, 226 P.3d 682, 
WILHOIT v. STATE
Discussed

Title 2. Agriculture

 
Cite
Name
Level

 
2 O.S. 16-82, 
Determination of Oklahoma Firefighters Pension and Retirement System Eligibility - Invoice Documentation
Cited

Title 17. Corporation Commission

 
Cite
Name
Level

 
17 O.S. 18, 
Authority to Employ Expert Witnesses and Present Testimony
Cited

Title 34. Initiative and Referendum

 
Cite
Name
Level

 
34 O.S. 6.1, 
Physical Count of Number of Signatures on Petitions - Notification of Violations - Purchase Necessary Assets
Cited

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 2-108, 
Powers and Duties of Commissioner
Cited

Title 53. Oklahoma Historical Societies and Associations

 
Cite
Name
Level

 
53 O.S. 1.10, 
Historical Society Revolving Fund
Cited

Title 56. Poor Persons

 
Cite
Name
Level

 
56 O.S. 4001.2, 
State Treasurer to Facilitate Access to a Qualified ABLE Program - Duties Upon Selection of Options
Cited

Title 57. Prisons and Reformatories

 
Cite
Name
Level

 
57 O.S. 537, 
Board of Directors for Canteen Services - Operating Procedures
Cited

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 668.1, 
Unclaimed Property Clearinghouse Fund - Authority to Expend Monies and Purchase Services
Cited

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 34.5, 
Appointment and Service of Director of Office of Management and Enterprise Services
Cited

 
62 O.S. 34.33, 
Authority to Develop, Design, and Construct State's Information Technology and Telecommunications Infrastructure and Security
Cited

 
62 O.S. 34.62, 
Encumbrance Requirements for Payments from Funds of State
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-410, 
Hospitalization and Treatment
Cited

Title 64. Public Lands

 
Cite
Name
Level

 
64 O.S. 1004, 64 O.S. 1004, 
Authority to Retain, Select, and Pay Realtors
Cited

Title 68. Revenue and Taxation

 
Cite
Name
Level

 
68 O.S. 264, 
Oklahoma Tax Commission Authorized to Enter Into Certain Contracts
Cited

Title 70. Schools

 
Cite
Name
Level

 
70 O.S. 3970.5, 
Duties of Board of Trustees of the Oklahoma College Savings Plan
Cited

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 61.1, 
Appointment of Director of Public Affairs
Cited

 
74 O.S. 61.2, 
Office of Management and Enterprise Services - Director
Cited

 
74 O.S. 85.1, 
Short Title
Cited

 
74 O.S. 85.2, 
Definitions
Cited

 
74 O.S. 85.3, 
Purchasing Division - State Purchasing Director - Employees - Encouragement of Certain Purchases - Conflict of Interest
Discussed

 
74 O.S. 85.39, 
Development and Promulgation of Internal Purchasing Procedures
Discussed

 
74 O.S. 85.5, 
Powers and Duties of State Purchasing Director
Discussed at Length

 
74 O.S. 85.12, 
Act Not to Affect Nonconflicting Procedures - Acquisitions Excluded - Audits - DHS or OJA Agency Special Account - Tourism and Recreation Department Exemptions
Discussed at Length

 
74 O.S. 85.7, 
Competitive Bid Procedures
Discussed at Length

 
74 O.S. 2221, 
Repealed
Cited

 
74 O.S. 85.44D, 
Repealed
Discussed